UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RIDER REYNOLDS LEWIS,
as an individual,

CASE NO. 00-7181
CIV-FERGUSON-SNOW

Plaintiff,

**JURY TRIAL REQUESTED**

vs.

AFFORDABLE HOME OWNERSHIP CORPORATION, CORNERSTONE MORTGAGE
CORPORATION, AKA COBBLESTONE MORTGAGE CORPORATION, AKA FIDELITY
MORTGAGE, RICHARD LAHAR, PAUL F. RAFTERY, DOMENIC GERMANO,
RAYMOND J.  PACZOWSKI, RAYMOND J. PACZKOWSKI, LEON D. ELLIOTT,
EDWARD J.  FIALKOWSKI, WOODROW PAGE, PATRICIA W. SMITH, ALINE
MURPHY, RE/MAX INTERNATIONAL, INC., RE/MAX IN MOTION, SUZANNE
DUNNE, aka SUZANNE LOWELL, JAMES DUNNE, aka JIM DUNNE, MATTHEW
DUNNE, JONATHAN LOWELL, FLORIDA PROPERTY MANAGEMENT & SALES
CORP., CAROL NELSON, DON NELSON, CHRIS ROSMYSLOWICZ, BUY SMART
REALTY, HLC CORPORATION, HUGH L.  CUNNINGHAM, DONOVAN CUNNINGHAM,
INGRID CUNNINGHAM,

Defendants.

_____

**FIRST AMENDED**
**COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**FLORIDA FAIR HOUSING ACT, ASSAULT AND BATTERY, INTENTIONAL**
**INFLICTION OF EMOTIONAL DISTRESS, INTERFERENCE WITH CONTRACT,**
**INTERFERENCE WITH BUSINESS, BREACH OF CONTRACT, AND FOR**
**COMPENSATORY AND PUNITIVE DAMAGES**

RIDER REYNOLDS LEWIS
PLAINTIFF *PRO SE*
8735 RAMBLEWOOD DRIVE #510
CORAL SPRINGS, FL 33071
TELEPHONE: 954.755.6878
        FAX: 954.255.6624
e-mail:  riderlaw@aol.com

## JURISDICTION

The United States District Court has jurisdiction over the
subject matter pursuant to THE RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT, TITLE VII OF THE CIVIL RIGHTS ACT
OF 1964 AND 1991, as amended (42 United States Code 2000e, et
seq. and 42 United States Code 1981, et seq., and the
pendent jurisdiction of the Court.

## PARTIES

PLAINTIFF RIDER REYNOLDS LEWIS is a 56 year old married individual residing in Broward County, Florida, and is a licensed Florida real estate salesperson and Realtor(tm) specializing in affordable housing, who is also a member of a class of low-to-middle income persons intended to be benefitted by a certain HUD/FHA affordable housing program which is the subject of this litigation. Plaintiff is also known by "The Family" Defendants as suffering from diabetes and its effects, including heart trouble;

DEFENDANT AFFORDABLE HOME OWNERSHIP CORPORATION, is a Florida not-for-profit corporation headquartered in Jacksonville, Florida, which, during a portion of the time referred to herein was certified to provide affordable housing pursuant to an HUD/FHA lease/purchase program;

DEFENDANT CORNERSTONE MORTGAGE CORPORATION, aka COBBLESTONE MORTGAGE CORPORATION and FIDELITY MORTGAGE, is a Massachusetts corporation, registered to do business in Florida with its principal Florida office in Saint Petersburg, Florida, and is the administrator of the affairs and *alter ego* of DEFENDANT AFFORDABLE HOME OWNERSHIP CORPORATION;

DEFENDANT RICHARD LAHAR is an individual who Plaintiff is informed and believes is a resident of Massachusetts, and is president of DEFENDANT CORNERSTONE MORTGAGE CORPORATION;

DEFENDANT RE/MAX INTERNATIONAL, INC., is a Colorado corporation, with fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, which holds itself

out to be the largest real estate company in the world, with agents and doing business in all 50 states, as well as in various other parts of the world, engaged in an "industry affecting commerce";

DEFENDANT RE/MAX IN MOTION is not registered with the Department of Corporations of the State of Florida as a foreign or domestic corporation, nor is it registered with the State of Florida as a fictitious name of a corporation, partnership or individual, and as such is an unincorporated association of real estate agents and real estate brokers doing business in Coral Springs, Florida, as agents and employees of themselves and of DEFENDANT RE/MAX INTERNATIONAL, INC. Plaintiff intends to amend this complaint to allege other members of the said unincorporated organization when the same have been ascertained, who Plaintiff alleges are also jointly and severally liable to Plaintiff, along with the named members of the association, for all damages alleged to have been caused by the said unincorporated association.

DEFENDANTS SUZANNE LOWELL, aka SUZANNE DUNN, JAMES DUNN, aka Jim Dunn, MATT DUNN, and JONATHAN LOWELL, hereinafter sometimes referred to as "THE FAMILY" (erroneously spelled "DUNNE" in the original summons and complaint), are all members of the RE/MAX IN MOTION unincorporated association, and hold themselves out to be Florida-licensed real estate agents or brokers, or whose licensure is pending, and Plaintiff is informed and believes that all are residents of Broward County, Florida.

DEFENDANTS RICHARD LAHAR, PAUL F. RAFTERY, DOMENIC

GERMANO, RAYMOND J. PACZOWSKI, RAYMOND J. PACZKOWSKI, LEON D. ELLIOTT, AND EDWARD J. FIALKOWSKI, are all officers, directors, and/or administrators and principals of DEFENDANTS AFFORDABLE HOME OWNERSHIP CORPORATION, CORNERSTONE MORTGAGE CORPORATION, and COBBLESTONE MORTGAGE CORPORATION, and Plaintiff is informed and believes that all are residents of Massachusetts.

DEFENDANTS WOODROW PAGE, PATRICIA W. SMITH and ALINE MURPHY are also officers, directors and principals of DEFENDANT AFFORDABLE HOME OWNERSHIP CORPORATION, and Plaintiff is informed and believes are residents of Florida.

DEFENDANTS FLORIDA PROPERTY MANAGEMENT & SALES CORP. is a Florida real estate brokerage, and DEFENDANT CAROL NELSON is a licensed Florida real estate broker and president of DEFENDANT FLORIDA PROPERTY MANAGEMENT & SALES CORP.

DEFENDANTS DON NELSON AND CHRIS ROSMYSLOWICZ are natural persons residing in the State of Illinois.

DEFENDANTS BUY SMART REALTY, HLC CORPORATION, HUGH L. CUNNINGHAM, DONOVAN CUNNINGHAM, AND INGRID CUNNINGHAM, are all Florida real estate brokers, Florida real estate sales persons, and/or persons in management and control of, and responsible for the business affairs and escrow account of DEFENDANT BUY SMART REALTY.

### STATEMENT OF FACTS

1.   During February, 2000, Plaintiff became aware, through other Realtors, of a federal affordable housing program to assist low to middle income persons, with challenged but reparable credit, to obtain housing through a lease/purchase program made available through The Department of Housing and Urban Development (hereinafter HUD).

2.   Under the program, described in HUD Mortgagee letter 96-52, and HUD Handbook 4155.1, REV-4, CHG1, *Mortgage Credit Analysis for Mortgage Insurance on One to Four Family Properties*, non-profit agencies with a Letter of Determination from the Internal Revenue Service approved as exempt under Section 501 (c)(3) from taxation under Section 501 (a) of the Internal Revenue Code of 1986, as amended, are certified by HUD/FHA to obtain FHA financing at the same attractive terms as owner occupants.   These owner/occupant terms include a low down payment requirement, and a  fixed 30 year term.

3.   The non-profit agency then obtains a qualifying participant from the local community to lease the property acquired under the program for a period of up to three years, or until the participant can qualify to assume the FHA loan, at which time the participant assumes the FHA loan in a paid-down state.   The non-profit corporation receives one half of the 6% down payment of the purchase price paid by the participant, as well as a 10% monthly fee for administering the lease.

4.   The program specifically prohibits the non-profit

-6-

corporation from being "under the influence, control, or direction of any outside party seeking to derive a profit or gain from the proposed project, such as a landowner, real estate broker, contractor , builder, *lender* (italics supplied) or consultant.

5. On or about February 22, 2000, Plaintiff, and his wife Clara, believing themselves to be qualified to participate in the affordable housing program, applied to and were initially approved in writing for a $70,000 loan by Defendants Lahar, Affordable and Cornerstone, through Affordable's agent and holder of power of attorney in Florida, Harold Bremser, who is not a party to this action, after paying a $295.00 application fee to Affordable, with the understanding that the fee was refundable if Plaintiff was not finally approved for the loan.

6. Beginning on or about March 16, 2000, Plaintiff and Defendants Don Nelson/ Chris Rosmyslowicz entered into a written agreement to, which was novated into a second agreement between Defendants Affordable/ Cornerstone and Nelson/ Rosmyslowicz to purchase a two bedroom condominium for the benefit of Plaintiff and his wife under the program, and Plaintiff took possession of the said property before the close of escrow, which was initially to be on or before April 30, 2000, subject to extension.

7. Due to delays in execution of the Deposit Receipt And Contract For Sale And Purchase by the Seller, and to the reneging on the parts of Defendants Carol Nelson and Florida Property Management & Sales Corp. to apply sales

commission on the transaction due Plaintiff to the escrow, the transaction did not close by April 30, 2000, although it was set to close prior to the decertification by HUD of Defendant Affordable.

8. Sometime during the month of May, 2000, Defendant Affordable was decertified to participate in HUD activities due to misconduct and improprieties by Defendant Affordable/Cornerstone in transactions other than the transactions with Plaintiff or any of his clients.

9. After his own approval under the HUD/FHA, and after learning that other Florida real estate agents had successfully closed transactions under the program, Plaintiff, as a licensed real estate agent with a major real estate company, began advertising for clients wishing to participate in the program. Plaintiff collected fees for Defendant Affordable and enrolled approximately 20 persons in the program who were approved by Defendants Lahar, Affordable and Cornerstone. The majority of Plaintiff's clients are minorities, predominantly African-American and Hispanic.

10. Although approximately ten of Plaintiff's clients subsequently caused Affordable/Cornerstone to enter into similar sales contracts on specific properties, none of the transactions, including Plaintiff's own personal transaction has ever closed, due to the decertification of Defendant Affordable.

11. Although repeated demand has been made upon Defendants Affordable and Cornerstone for the refund of application fees, and in some cases, down payments paid into

-8-

escrow to Defendants Affordable/Cornerstone, no refunds have
been made. The said Defendants have admitted to Plaintiff,
in fact, that said funds were spent and otherwise
misappropriated.

12. Plaintiff has accumulated a list, the attached
Exhibit A, which contains the names of Plaintiff's clients,
plus the names of clients from other real estate brokers and
agents whose monies not been returned, and in some cases
misappropriated by certain of the Defendants. Plaintiff
contends that Exhibit A demonstrates that the said defendants
are engaged in a common plan or scheme to deprive persons
such as Plaintiff of his property, and that their actions
toward Plaintiff have not been a single act.

13. On or about May 15, 2000, Plaintiff was induced by
Defendants Re/Max International, Inc., Re/Max In Motion, and
The Family Defendants (hereinafter the Re/Max Defendants) to
change his broker affiliation from Century 21 to Re/Max In
Motion, representing to Plaintiff that they would fully-
support his efforts to specialize in affordable housing, and
further representing that they, too, were engaged in the
HUD/FHA program with Defendant Affordable Home Ownership
Corporation.

14. After Plaintiff entered into a written contract
with the Re/Max Defendants and leased office space from the
said Defendant Re/Max In Motion, and as Plaintiff continued
experiencing difficulty with closings with Defendants
Affordable/Cornerstone, the Re/Max Defendants became
immediately disillusioned with affordable housing, and began

-9-

to encourage Plaintiff to withdraw from affordable housing and to participate in the mainstream real estate business engaged in by the other 25 some-odd Realtors in the Re/Max In Motion office in Coral Springs, FL.

15.   Plaintiff rebuffed repeated efforts by the Re/Max Defendants during June, 2000, to dissuade Plaintiff from continuing to engage in the affordable housing program by disparaging Plaintiff's minority clients, referring to them on one occasion as "the scum of the Earth", and refusing to accept full price offers by Plaintiff's clients on properties listed by Re/Max.

16.   On or about June 28, 2000, Plaintiff was forced to withdraw, or was discharged from employment with the Re/Max Defendants after being violently assaulted by Defendant James Dunne, aka Jim Dunne, in the presence of, and with the approval and encouragement of the other Family Defendants, during which Plaintiff was thrown violently against the wall of Jim and Suzanne Dunne's office, after Plaintiff disclosed to the Family Defendants that he was attempting to secure the services of another non-profit corporation which had been certified by HUD/FHA, and that he had obtained approval to offer the program to foreign nationals who intended to obtain permanent status within three years.

17.   Plaintiff did nothing to provoke the assault and had always been on harmonious terms with other real estate agents in the Re/Max office up to and including the time of the assault.   The assault came unexpectedly and as a complete surprise to Plaintiff, who was thereby caught completely off

-10-

guard. Plaintiff had sustained a mild myocardial infarction, as reflected in his medical history prior to the assault, and Plaintiff is fearful the assault has caused further damage to his heart which may affect his ability to work.

18. Plaintiff filed a timely police report on the incident with the Coral Springs Police Department, and the matter has been referred to the Florida State Attorney's Office for prosecution against Defendant James Dunne aka Jim Dunne for criminal assault.

19. On or about June 28, 2000, after leaving Re/Max, Plaintiff placed his real estate license with the Buy Smart Defendants, who Plaintiff was informed and believes, had successfully completed real estate transactions with Defendant Affordable/ Cornerstone prior to decertification, and thereafter attempted to obtain other financing for Plaintiff's clients on Exhibit A, and entering them into real estate purchase contracts subject to obtaining such financing, and depositing into the Buy Smart escrow account, monies belonging to Plaintiff's clients. Thousands of dollars of said escrow monies have been misappropriated by the Buy Smart Defendants between June 28, 2000, and September 8, 2000, when Plaintiff withdrew his license from the Buy Smart Defendants, and subsequently filed complaints with the Florida Real Estate Commission and Coral Springs Police Department.

PLAINTIFF REQUESTS A JURY TRIAL IN THE WITHIN MATTER.

-11-

## EXHIBIT A

1.   Rider R. Lewis and Clara I. Lewis
2.   Richard Smith and Angela Jones
3.   Novlette McDonald
4.   Wilfred Stewart
5.   Spur Gaspard and Linda Gaspard
6.   Irlene Divisien and Jeanne Laveaux
7.   George Crawford and Sheila Crawford
8.   Violet Alphonso
9.   James Wilson
10.  Audlay Young
11.  Colette Earle
12.  Roger Grace and Jeanette Grace
13.  Rita Harron and Don Harron
14.  Homer Sapp
15.  Michelle Pullins
16.  Watson Britt and Demetrius Britt
17.  Darayl Hanna and Patricia Hanna
18.  Roy Barnes and Crystal Barnes
19.  Cassandra Harrell
20.  Marion Cooper
21.  Rowena Polidon
22.  Isolyn Baker
23.  Marion Cooper
24.  Karen Louise Clarke
25.  Felicia Alston
26.  Roy C. Barnes II
27.  Dwan Hunt
28.  Calvin Henry
29.  Ann M. Edwards
30.  Derral Hall
31.  Antoine Gerdak
32.  Betty Mitchell
33.  Alourde Lambert
34.  Mary Johnson and Loucious Orange
35.  Carliss Lightbourne
36.  Latrice Lewis
37.  Nicole Polycarpe
38.  Richard Pratt
39.  Trellany McMath
40.  Roderick Peterson
41.  Sonya McSwain
42.  Michael Markland
43.  Nakia Myers
44.  Deborah Skeen
45.  Ruby Simms
46.  Guillermo Tejeda
47.  Guy Sillien
48.  Angela Richardson
49.  Ethel Wooten
50.  Leonard Grant
51.  Richard Hassler and Lisa Vickers
52.  Klaas Van Dijk
53.  Sharon Fyffe
54.  Troy Brown
55.  Karen Williams

**COUNT ONE**

CAUSE OF ACTION AGAINST DEFENDANTS AFFORDABLE HOME OWNERSHIP
CORPORATION, CORNERSTONE MORTGAGE CORPORATION, COBBLESTONE
MORTGAGE CORPORATION, FIDELITY MORTGAGE, RICHARD LAHAR, PAUL
F. RAFTERY, DOMENIC GERMANO, RAYMOND J. PACZOWSKI, RAYMOND
J. PACZKOWSKI, LEON D. ELLIOTT, EDWARD J. FIALKOWSKI,
WOODROW PAGE, PATRICIA W. SMITH, ALINE MURPHY, BUY SMART
REALTY, HFLC CORPORATION, HUGH L. CUNNINGHAM, DONOVAN
CUNNINGHAM, AND INGRID CUNNINGHAM, FOR RICO VIOLATIONS

19A.  This is a cause of action brought under 18 U.S.C.
Sections  1961-68  (1994),  and,  more  specifically,  under
Sections 1962(a), 1962(b), 1962(c) and 1962(d) of said act,
Plaintiff being a person *injured* in his *business* and *property*
by reason of violations of Section 1962.

20.  Plaintiff  at  all  times  mentioned  herein  was  an
individual residing in Broward County, Florida, and was also
a licensed Florida real estate salesperson, who participated
with his wife directly, and as a real estate licensee on
behalf of clients, in a federal affordable housing program
which the said Defendants were certified by HUD/FHA.

21.  Plaintiff and his wife are members of a class of
persons intended to be benefitted by that federal program,
set forth in paragraphs 1-12 of the STATEMENT OF FACTS, which
Plaintiff incorporates herein by reference, as though set
forth in full.

22.  The  said  Defendants,  and  each  of  them,  are
individuals,  partnerships,  corporations  or  associations,
employed  or  associated  with  an  *enterprise*  which  affects
interstate and foreign commerce, the specific
enterprise  being  the  making  or  purchasing  of  loans  or
providing other financial assistance for purchasing,

-13-

constructing, improving, repairing or maintaining a dwelling secured by residential real estate, and the selling, brokering, and appraisal of residential real estate, throughout various states, including Plaintiff's state of residence, Florida.

23.   The said Defendants, and each of them, conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, through a pattern of criminal and racketeering activity.

24.   Said pattern of criminal and racketeering activity includes repeated and continuous conduct toward Plaintiff and other persons listed in Exhibit A, incorporated herein by reference as though set forth in full:

a.   misappropriation of application fees for loans which were not approved and funded and should have properly been refunded;

b.   improper acquisition of and misappropriation of down payments which were to have been properly placed in an escrow account, and which should have been released to their depositors when their real estate transactions did not close;

c.   improperly interfering with a federal affordable housing program;

d.   violating federal law and specific HUD regulations by improperly controlling, influencing, administering and misappropriating the funds of a HUD-certified non-profit corporation;

e.   conspiring to commit the acts alleged in a-d, above.

-14-

25. Plaintiff has specifically and individually been damaged in the sum of $295.00 as and for his own loan application fee which has not been refunded by the Defendants, for $2900.00 in funds deposited into or credited to escrow, and for lost real estate business in a sum in excess of $100,000.00, for failed real estate transactions which were lost due to the activities of the said Defendants, and for which Plaintiff was entitled to commissions, the exact amount of which is to be proved at the time of trial.

26.  Plaintiff also seeks an injunction barring the said Defendants, and their officers and directors from ever participating in any FHA, VA, HUD or any other federal government housing, financing program or activities.

**COUNT TWO**

CAUSE OF ACTION AGAINST RE/MAX INTERNATIONAL, INC., RE/MAX
IN MOTION, SUZANNE DUNNE AKA SUZANNE LOWELL, JAMES DUNNE AKA
JIM DUNNE, MATTHEW DUNNE, JONATHAN LOWELL, AND ALL OTHER
MEMBERS OF THE RE/MAX IN MOTION UNINCORPORATED ASSOCIATION,
FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
AS AMENDED (42 USC 1981, 1983, 1985)

27.        Plaintiff has standing to assert these claims
as an aggrieved or injured party in that he has been
physically assaulted and battered, injured in his physical
and emotional health, and suffered economic losses as a
direct and proximate result of the Defendants' conduct and
interference with the subject federal program, said economic
losses including loss of business and commissions, and loss
of reputation among his clients.

28.        Plaintiff and the said Defendants entered into
a written agreement on June 1, 2000, which memorialized an
oral agreement between the parties which began on or about
May 15, 2000, and in which Plaintiff agreed to rent office
space at the Defendant Re/Max In Motion offices in Coral
Springs, and to become a part of the Re/Max organization,
also paying fees to Defendant RE/MAX INTERNATIONAL, INC.

29.        Plaintiff took peaceful possession of an
office which he shared with another Realtor, and paid all
fees, dues and rent required of him to remain in good
standing with the RE/MAX organization and with the local
board of Realtors.

30.        Under the aforesaid written agreement
Plaintiff and the said Defendants were mutually bound:

a. to operate as an "integral part of the RE/MAX

-16-

system";

b. That the parties were to abide by all national, State and local laws, governing real estate transactions and the rule of ethical conduct established by the National Association or Board of Realtors;

c. That all parties were bound to "do everything possible to protect and maintain a high ethical standard" in the conduct of the real estate service business;

d. That all parties were "to provide dependable, efficient, courteous, high quality and professional real estate services, in order to create and maintain public goodwill for the entire RE/MAX System on an International basis";

e. That the parties agreed to maintain a "proper attitude toward the public, Broker and their fellow RE/MAX contractors, and not to engage in any acts or activities that may "disrupt or discredit the RE/MAX System";

31.        Prior to changing brokers and entering into the agreement with the Defendants, Plaintiff fully advised and apprised the said Defendants that Plaintiff limited his real estate practice primarily to affordable housing issues, that he would generate all his own clients, and bring clients with him into the real estate services business;

32.        Plaintiff also fully advised the said Defendants that the majority of Plaintiff's clients were minorities of Hispanic and African-American descent, many of whom did not have U.S. citizenship, and some did not have permanent status;

-17-

33.        Plaintiff   also   fully   advised   the   said
Defendants of the nature of the affordable housing program he
was   involved   in   as   referred   to   in   paragraphs   1-3   of   the
Statement   of   Facts,   and   of   the   problems   with   Defendant
Affordable,   which   Plaintiff   was   attempting   to   help   get
resolved;

34.        The   said   Defendants   represented   to   Plaintiff
that they would support Plaintiff in his affordable housing
program for his minority clients, and that they themselves
had a number of contracts pending under the same program;

35.        Soon   after   Plaintiff   changed   brokers,   and
became   a   part   of   the   RE/MAX   organization,   however,   the
attitude   of   the   said   Defendants   changed   dramatically,   and
they began a collusive program to discourage Plaintiff from
participating   in   the   federal   program,   by   engaging   in   the
following conduct:

a.   making disparaging remarks about the program;

b.   making Plaintiff's clients feel uncomfortable in the
reception room of the offices;

c.   referring to Plaintiff's clients as "the scum of the
Earth";

d.   suggesting that Plaintiff abandon the program and
concentrate   on   the   mainstream   upscale   real   estate
services concentrated on by the other Realtors in the
office;

e.   refusing to accept full price offers by Plaintiff's
clients on office listings;

36.        The conduct of the Defendants became

-18-

exacerbated until the conduct peaked on June 27, 2000, culminating with the office assault and forcible eviction of Plaintiff from the offices, and immediately telling Plaintiff's clients who attempted to contact Plaintiff on that day that he was no longer with the office and could not be contacted.

37.        The conduct on June 27, 2000, was precipitated when Plaintiff formally announced to the office the approval of the affordable housing proram for foreign nationals.

38.        The acts and conduct of the Defendants is in violation of Title VII of the Civil Rights Act of 1964, as amended (42 USC 1981, 1983, 1985 in that:

a. the Defendants discriminate in their real estate services business on the basis of citizenship;

b. the conduct of the Defendants creates a disparate impact on real estate services as between white and non-white persons, and as between citizens and non-citizens;

c. the conduct of the Defendants constitutes wrongful discharge of Plaintiff, wrongful termination of Plaintiff's contract, and retaliation for participation as a Realtor in the federal affordable housing program;

39.        Plaintiff specifically alleges that RE/MAX INTERNATIONAL, INC., is liable under this cause of action because it exercises considerable management and control over the RE/MAX IN MOTION unincorporated association and its members, and that the unincorporated association would have no legal existence in the State of Florida but for the management and control by RE/MAX, INTERNATIONAL, INC.

-19-

40.         Plaintiff alleges that the said Defendants are liable to Plaintiff for compensatory and punitive damages for violations of federal law, as aforesaid, and under the doctrine of *respondeat superior*.

-19A-

**COUNT THREE**

CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF THE
FAIR HOUSING ACT, FLORIDA STATUTES ANNOTATED SECTION 760.24,
AND FLORIDA STATUTES ANNOTATED SECTION 760.25

41.   Plaintiff incorporates herein by reference each and
every allegation contained in paragraphs 23-25 of **COUNT ONE**,
and paragraphs 27-40 of **COUNT TWO**, as though set forth in
full;

42.   That the acts of the Defendants, and each of them,
are in violation of the Florida Fair Housing Act in that by
such acts and conduct the said Defendants discriminate in the
sale or rental of housing, in the provision of brokerage
services, and in the financing of housing or in residential
real estate transactions.

42.   That Plaintiff has been damaged by the acts of the
Defendants in his physical and emotional health and well-
being, and has suffered economic losses by way of direct
monetary losses and loss of commissions, loss of reputation
and loss of business and business earnings and earning
capacity.

## COUNT FOUR

CAUSE OF ACTION AGAINST RE/MAX INTERNATIONAL, INC., RE/MAX
IN MOTION, SUZANNE DUNNE AKA SUZANNE LOWELL, JAMES DUNNE AKA
JIM DUNNE, MATTHEW DUNNE, JONATHAN LOWELL, AND ALL OTHER
MEMBERS OF THE RE/MAX IN MOTION UNINCORPORATED ASSOCIATION
FOR ASSAULT AND BATTERY

43.        DEFENDANTS RE/MAX INTERNATIONAL, INC.,
RE/MAX IN MOTION,"The Family" Defendants, AND OTHER DEFENDANT
MEMBERS OF THE RE/MAX IN MOTION UNINCORPORATED ASSOCIATION
group  of  defendants,  knew  or  should  have  known,  but
unbeknownst to Plaintiff, that Defendant James Dunne, aka Jim
Dunne,  was  unstable,  volatile,  impulsive,  hot-tempered,
irrational,  combative,  and  generally  ill-suited  and
incompetent to be involved in the management of the Re/Max In
Motion professional real estate office in an upscale area of
Coral Springs, Florida.  Said Defendants wrongfully permitted
Defendant James Dunne to illegally hold himself out to be a
real estate broker to imbue himself with an exaggerated sense
of power and authority within the RE/MAX Organization;

44.        Said Defendants represented to Plaintiff in
writing, to induce Plaintiff to enter into an
independent contractual real estate relationship with them,
on or about June 1, 2000, and Plaintiff alleges that
there exists mutuality of obligation as between Plaintiff
and  the  said  Re/Max  Defendants,  with  respect  to  the
following:

a.   That  Plaintiff  and  the  Re/Max  Defendants,  upon
entering into a contractual relationship, as they did in fact
enter into on or about June 1, 2000, became an "integral part
of the RE/MAX system";

-21-

b.   That the parties were to abide by all national, State and local laws, governing real estate transactions and the rule of ethical conduct established by the National Association or Board of REALTORS;

c.   That all parties were bound to "do everything possible to protect and maintain a high ethical standard" in the conduct of the real estate service business;

d.   That all parties were "to provide dependable, efficient, courteous, high quality and professional real estate services, in order to create and maintain public goodwill for the entire RE/MAX System on an International basis."

e.   That the parties agreed to maintain a "proper attitude" toward the public, Broker and their fellow RE/MAX contractors, and not to engage in any acts or activities that may "disrupt or discredit the RE/MAX System";

45.   The high standards thereby set by the RE/MAX Defendants, along with agreement of the parties to "strictly observe" the most current operation procedures and policy directives   "established   by   the   Broker,   Region   and International", were made a material consideration for the execution of the agreement between the parties.

46.   Notwithstanding the scienter of the said Defendants with respect to the flawed character of Defendant James Dunne, the said Defendants permitted this "loose cannon"  to conduct their business affairs and in effect manage the Coral Springs office.  Defendant Suzanne Dunne, with full knowledge of the probable and expected consequences of relinquishing

-22-

her broker authority to her husband, Defendant James Dunne, did in fact immorally, improperly and illegally delegate such authority.

47.       On or about June 27, 2000, at about 2:15 P.M., and again at about 3:15 P.M., Defendant James Dunne, aka Jim Dunne, did violently, and without cause, justification or provocation, commit assault and battery upon the body and person of the Plaintiff, causing great physical injury to Plaintiff.

48.       Said Defendant Dunne was aided and abetted in the assault by the other "Family" Defendants, Defendant Suzanne Dunne, aka Suzanne Lowell, Defendant Jonathan Lowell, and Defendant Matthew Dunne.

49.       By reason of the fact that Defendant RE/MAX INTERNATIONAL, INC., provides substantial management and control over the RE/MAX IN MOTION unincorporated association, although it has failed and refused to provide adequate management and control, and a safe work environment, and in fact provides a "hostile work environment", by failing and refusing to provide the guidance and training required by the high standards it sets for itself in paragraphs a-e above, and has failed and refused to maintain its own standards, Plaintiff alleges that it is liable for the damages suffered by Plaintiff in the assault.

50.  Plaintiff has suffered great physical and mental pain and anguish, loss of earnings and earning capacity, and may require future medical care, proximately caused by the acts or failure to act of the Defendants and each of them,

and for which they are individually and severally liable to
Plaintiff. Plaintiff will prove up general and punitive
damages at the time of trial of this matter.

## COUNT FIVE

### CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST "THE FAMILY" DEFENDANTS

51.       Plaintiff incorporates by reference each and every allegation contained in paragraphs 43-50 of **COUNT 4** as though set forth herein in full

52.       The conduct of the Defendants Re/Max In Motion, Suzanne Dunne, aka Suzanne Lowell, James Dunne, aka Jim Dunne, Matthew Dunne, and Jonathan Lowell, was intentional, and conducted according to a common plan or scheme to provoke Plaintiff into a physical fight, and to injure severely Plaintiff in his body and person, and to forcibly evict Plaintiff from the RE/MAX IN MOTION premises, in which each of the named Defendants conspired and played an active and overt part, and without the assistance of the other, the scheme would have had less impact and failed.

53.       The conduct of the said Defendants was outrageous, and well outside the bounds of common courtesy and decency, in the eyes of the Plaintiff, and in the eyes of the average ordinary person.

54.       The acts of the said Defendants were intended to cause and did in fact cause severe emotional distress to Plaintiff, and exacerbated a pre-existing diabetic condition, and permanently damaged and injured Plaintiff in his health, for which Plaintiff is entitled to compensatory and punitive damages as may be proved at the time of trial.

## COUNT SIX

### CAUSE OF ACTION AGAINST AFFORDABLE, CORNERSTONE DEFENDANTS FOR INTERFERENCE WITH CONTRACT

55.     Plaintiff incorporates by reference herein each and every allegation contained in paragraphs 1-18 of the Statement of Facts, paragraphs 23-25 of COUNT ONE, and paragraphs 35-39 of COUNT TWO as though set forth in full.

56.     The said Defendants are liable to Plaintiff for compensatory and punitive damages for interference with contracts between Plaintiff and his clients for the purchase of residential property, which contracts failed to be consummated as a direct consequence of the acts of the said Defendants.

## COUNT SEVEN

### CAUSE OF ACTION AGAINST THE RE/MAX DEFENDANTS FOR INTERFERENCE WITH CONTRACT

57.     Plaintiff incorporates by reference herein each and every allegation contained in paragraphs 1-18 of the Statement of Facts, paragraphs 23-25 of COUNT ONE, and paragraphs 35-39 of COUNT TWO as though set forth in full.

58.     The said individual Defendants are liable to Plaintiff for compensatory and punitive damages for interference with the contract between Plaintiff and RE/MAX INTERNATIONAL, INC., which made Plaintiff an integral part of the RE/MAX System, privy to all benefits and privileges attached to such membership.

/

/

-26-

## COUNT EIGHT

### CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR INTERFERENCE WITH BUSINESS (PRACTICE OF PROFESSION)

59.        Plaintiff  incorporates  by  reference  herein each and every allegation contained in paragraphs 1-18 of the Statement  of  Facts,  paragraphs  23-25  of  COUNT  ONE,  and paragraphs 35-39 of COUNT TWO as though set forth in full.

60.        The  conduct  of  the  Defendants,  and  each  of them,  as  hereinbefore  alleged  has  interfered  with  the practice  of  the  real  estate  profession  by  the  Plaintiff, causing  Plaintiff  to  lose  clients  and  customers,  causing contracts  to  fail,  and  causing  existing  and  prospective customers  to  lose  confidence  in  Plaintiff  and  in  the affordable housing program in which Plaintiff specializes.

61.   Plaintiff has been damaged by the acts and conducts of  the  said  Defendants  in  an  amount  Plaintiff  intends  to prove at the time of trial.

**COUNT NINE**

CAUSE OF ACTION AGAINST DEFENDANTS, FLORIDA PROPERTY MANAGEMENT & SALES CORP., CAROL NELSON, DON NELSON, CHRIS ROSMYSLOWICZ, AND THE AFFORDABLE/ CORNERSTONE DEFENDANTS FOR DAMAGES FOR BREACH OF CONTRACT OR, IN THE ALTERNATIVE, FOR SPECIFIC PERFORMANCE.

62.   Plaintiff incorporates by reference herein each and every allegation contained i paragraphs 1-19 of the Statement of Facts, paragraphs 23-25 of COUNT ONE, and paragraphs 35-39 of COUNT TWO, as though set forth herein in full.

63.   Plaintiff and Defendants Don Nelson and Chris Rosmyslowicz entered into a written agreement for the purchase of certain real property located at 8735 Ramblewood Drive, Coral Springs, FL 33071, on March 16, 2000, in which Defendants Carol Nelson and Florida Property Management & Sales Corp. acted as real estate broker, which gave Plaintiff and his wife the right to immediate possession of said property, and Plaintiff took possession thereunder on or about March 20, 2000.

64.   Under the terms of said written agreement, Plaintiff deposited, or caused to be deposited, funds and credits totalling $2900.00, toward the down payment, which funds were to be returned to Plaintiff if an FHA loan on the property was not actually funded.

65.   A novation was agreed to on or about March 19, 2000, wherein Defendant Affordable/ Cornerstone was substituted as Buyer for Plaintiff in a sucessor agreement. Said novation was made for the benefit of Plaintiff.

66.   The Defendants prevented the timely closing of the escrow on the sale by failing and refusing for approximately

-28-

30 days to execute the sucessor agreement and to stipulate in writing to the previously agreed upon deposits and credits.

67.  Closing was set for the transaction, but before closing actually occurred, Defendant Affordable/ Cornerstone was de-certified by the Department of Housing and Urban Development to act as a Buyer.   The Affordable/ Cornerstone Defendants can be expected to take the position that but for the said Defendants' failure and refusal to timely execute the novation and deposit the funds and credits into escrow, the closing would have occurred.

68.  Plaintiff offered in writing to either reinstate the original contract, with additional terms beneficial to the Defendants, or to vacate the property upon being refunded certain deposits that had been made into escrow.

69.  The said Defendants have failed and refused to either refund deposits due Plaintiff, or to sell the property to him on the original terms, and, instead, have filed an action to evict Plaintiff from the premises.   Plaintiff has performed all other conditions required of him under the contract.

70.  Plaintiff has been damaged by the acts of the Defendants in an amount to be proved at the time of trial, or, in the alternative, is entitled to specific performance under the contract.

## COUNT TEN

CAUSE OF ACTION AGAINST DEFENDANTS, FLORIDA PROPERTY MANAGEMENT & SALES CORP., CAROL NELSON, DON NELSON, CHRIS ROSMYSLOWICZ, AND THE AFFORDABLE/ CORNERSTONE DEFENDANTS FOR DAMAGES FOR INTERFERENCE WITH CONTRACT.

71.  Plaintiff incorporates by reference herein each and every allegation contained i paragraphs 1-19 of the Statement of Facts, paragraphs 23-25 of COUNT ONE, and paragraphs 35-39 of COUNT TWO, as though set forth herein in full.

72.  Plaintiff and Defendants Don Nelson and Chris Rosmyslowicz entered into a written agreement for the purchase of certain real property located at 8735 Ramblewood Drive, Coral Springs, FL 33071, on March 16, 2000, in which Defendants Carol Nelson and Florida Property Management & Sales Corp. acted as real estate broker, which gave Plaintiff and his wife the right to immediate possession of said property, and Plaintiff took possession thereunder on or about March 20, 2000.

73.  Under the terms of said written agreement, Plaintiff deposited, or caused to be deposited, funds and credits totalling $2900.00, toward the down payment, which funds were to be returned to Plaintiff if an FHA loan on the property was not actually funded.

74.  A novation was agreed to on or about March 19, 2000, wherein Defendant Affordable/ Cornerstone was substituted as Buyer for Plaintiff in a sucessor agreement. Said novation was made for the benefit of Plaintiff.

75.  The Defendants prevented the timely closing of the escrow on the sale by failing and refusing for approximately

30 days to execute the sucessor agreement and to stipulate in writing to the previously agreed upon deposits and credits.

    76.   Closing was set for the transaction, but before   closing   actually   occurred,   Defendant   Affordable/ Cornerstone was de-certified by the Department of Housing   and   Urban   Development   to   act   as   a   Buyer.   The Affordable/ Cornerstone Defendants can be expected to take the position that but for the said Defendants' failure and refusal to timely execute the novation and deposit the funds   and   credits   into   escrow,   the   closing   would   have occurred.

    77.   Plaintiff offered in writing to either reinstate the original contract, with additional terms beneficial to the Defendants, or to vacate the property upon being refunded certain deposits that had been made into escrow.

    78.   The   said   Defendants   have   failed   and   refused   to either refund deposits due Plaintiff, or to sell the property to him on the original terms, and, instead, have filed an action to evict Plaintiff from the premises.

    79.   Plaintiff   has   been   damaged   by   the   acts   of   the Defendants in an amount to be proved at the time of trial.

WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AGAINST THE DEFENDANTS, AND EACH OF THEM AS FOLLOWS:

1. For damages as may be proved at the time of trial, and treble those damages, and for costs and reasonable attorneys fees, should Plaintiff retain counsel, under **COUNT ONE,** and for imposition of a trust upon such award to Plaintiff's nominee non-profit corporation for the purpose of establishing a fund to assist eligible persons seeking affordable housing with the required down payment under the subject HUD/FHA program;

2. For general and punitive damages as may be proved at the time of trial, and for costs and reasonable attorneys fees, if Plaintiff chooses to retain counsel, under **COUNT TWO,** and for imposition of a trust upon such award to Plaintiff's nominee non-profit corporation for the purpose of establishing a fund to assist eligible persons seeking affordable housing with the required down payment under the subject HUD/FHA program;

3. For general and punitive damages as may be proved at the time of trial, and for costs and reasonable attorneys fees, if Plaintiff chooses to retain counsel, under **COUNT THREE,** and for imposition of a trust upon such award to Plaintiff's nominee non-profit corporation for the purpose of establishing a fund to assist eligible persons seeking affordable housing with the required down payment under the subject HUD/FHA program;

4. For general and punitive damages as may be proved at the time of trial, under **COUNT FOUR;**

5.  For general and punitive damages as may be proved at the time of trial, under **COUNT FIVE**;

6.  For general and punitive damages as may be proved at the time of trial, under **COUNT SIX**;

7.  For general and punitive damages as may be proved at the time of trial under **COUNT SEVEN**;

8.  For general and punitive damages as may be proved at the time of trial, under **COUNT EIGHT**;

9.  For specific performance, or for consequential damages as may be proved at the time of trial, under **COUNT NINE**;

10.  For general and punitive damages as may be proved at the time of trial, under **COUNT TEN**;

11. For costs and reasonable attorneys fees if Plaintiff chooses to retain counsel for the trial of this matter;

12.  For such further relief which to the Court may seem just and proper.

The undersigned certifies that a copy of the within document has been furnished by mail on the below date to all counsel of record, or to parties who have been served with a copy of the Summons and Complaint but have not yet appeared, either *pro se*, or by counsel.

DATED:  SEPTEMBER 20, 2000

RIDER REYNOLDS LEWIS
*PRO SE* PLAINTIFF
8735  Ramblewood  Drive  #510
Coral  Springs,  FL     33071
Telephone:  954.755.6878
       Fax:  954.255.6624
e-mail: riderlaw@aol.com

-33-